UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NAZARETH PERKINS,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>NELSON ALVES,<br><br>　　　　Respondent. | *<br>*<br>*<br>*<br>*<br>*　Civil Action No. 1:21-cv-12037-ADB<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

    On February 28, 2019, a Suffolk County Superior Court jury found Petitioner Nazareth Perkins ("Petitioner") guilty of armed and masked robbery in violation of Mass. Gen. Laws ch. 265, § 17, following which he was sentenced to fifteen to twenty years in prison. [ECF Nos. 1, 17]. Before the Court is Petitioner's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [ECF No. 1 ("Petition" or "Pet.")]. For the following reasons, the Petition is DENIED.

**I.　BACKGROUND**

    **A.　Factual Background**

    The Massachusetts Appeals Court ("MAC") provided the following account of relevant facts, which the Court accepts as true.[1]

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This presumption applies with equal force to findings of fact by state trial and appellate courts. RaShad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

1

On or around January 19, 2017, Petitioner and "two other men . . . carried firearms [into a market,] pointed them at the market workers," and "took money from cash registers, money from one of the market workers, and a box of cigarettes." [ECF No. 14-1 at 155–56]. Petitioner wore a mask during the robbery, and one of the two other men, later identified as Richard Greene ("Greene"), did not. [Id.].

At trial, the court admitted cell phone records and a jail call recording that established Petitioner's relationship with Greene and communications between the two leading up to the robbery. See [ECF No. 14-1 at 157, 160].

Regarding the cell phone records, the Court found that

> [t]hrough [the] cell phone records, the police . . . learned that [Petitioner] and Greene . . . had twenty-six communications on their cell phones between 3:56 P.M. and 8:51 P.M. on the date of the robbery. Moreover, many of the communications occurred just prior to the robbery, but ceased at 7:21 P.M. There were no such communications between the [Petitioner] and [Greene] between 8:00 P.M. and 8:11 P.M., which was the time when the robbery and getaway occurred. In fact, there was no cell phone activity whatsoever on either of their cell phones (with the exception of one missed call on [Greene]'s cell phone from a different number), between 8:00 P.M. and 8:11 P.M.

[ECF No. 14-1 at 156–57].

Testimony at trial also established that Petitioner and "Greene knew and referred to each other by their respective nicknames, 'Naz' and 'June.'" [ECF No. 14-1 at 157]. This was relevant in part because "June" was the name used for Greene's "cell phone subscriber information." [Id. at 160]. The testimony regarding the nicknames stemmed from the contested jail call recording in which "Greene identified himself as 'June,'" and a woman responded that Petitioner "Naz, from the [g]ate says '[h]ello.'" [Id.]. Greene then replied "[t]ell him I said, '[w]hat's up?' back." [Id.].

Following his conviction and sentence, Petitioner appealed to the MAC, arguing that the trial court erred in admitting the cell phone records and the jail call recording because (1) with

respect to the cell phone records, there was insufficient authentication to show that he made the calls, and (2) with respect to the jail call recording, it was inadmissible multi-level hearsay. [ECF No. 14-1 at 21, 24, 28, 43].  In his appeal brief, Petitioner argued that the admissions of the cell phone records and the jail call recording entitled him to a new trial because he was "denied his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the Constitution, and Article 12 of the Massachusetts Declaration of Rights." [Id. at 37–38].  The Table of Authorities also listed the Fifth, Sixth, and Fourteenth Amendments to the Constitution, and the Addendum included the text of those Amendments in full.  [Id. at 23, 41–46].  The MAC affirmed the conviction, finding that the cell phone records were admissible under the Massachusetts business records exception to the hearsay rule under Mass. Gen. Laws ch. 233, § 78,[2] [id. at 157], and the jail call recording was admissible for the limited purposes of a statement of identification and to "show the existence of the relationship between the perpetrators," [id. at 160].  The MAC did not specifically reference Petitioner's constitutional arguments.  See generally [id. at 155–61].

      Petitioner then filed an application for leave to obtain further appellate review (an "ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC").  [ECF No. 14-1 at 141–54].  Petitioner again argued that the admission of the cell phone records and the jail call recording "denied [him] his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the Constitution, and Article 12 of the Massachusetts Declaration of Rights,"

---

[2] The MAC also found that, even if Petitioner had argued that the cell phone records were inadmissible as speculative or that the prejudicial impact outweighed the probative value, the cell phone records would have been admitted because "[t]he Commonwealth introduced abundant corroborative evidence."  [ECF No. 14-1 at 158].

and listed the federal Amendments in the Table of Authorities.  [Id. at 143, 147, 152].  The SJC denied Petitioner's ALOFAR on January 14, 2021.  [Id. at 162.]

Petitioner filed the instant habeas petition on December 13, 2021.  [ECF No. 1].  Respondent opposed on June 1, 2022.  [Pet.].  On August 3, 2022, both parties filed memorandums of law in support of their respective positions.  [ECF Nos. 17, 18].

## II.     LEGAL STANDARD

A federal district court's review of a state criminal conviction is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), which "restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been 'adjudicated on the merits in State court.'"  Johnson v. Williams, 568 U.S. 289, 292 (2013) (quoting 28 U.S.C. § 2254(d)).  When a state court has decided a legal claim on the merits, a federal habeas court may not grant relief unless, as relevant here, "the adjudication of the claim . . . '[]resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Id. at 292 (quoting 28 U.S.C. § 2254(d)); see also Roman v. Mitchell, 924 F.3d 3, 7 (1st Cir. 2019) (similar).

## III.    ANALYSIS

### A.     Whether Petitioner's Claims Were Adjudicated on the Merits

As an initial matter, the Court must determine whether Petitioner's claims were "adjudicated on the merits in State court."  28 U.S.C. § 2254(d).  The Supreme Court has held that

> when a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits.

Johnson, 568 U.S. at 293 (citing Harrington v. Richter, 562 U.S. 68, 99 (2011)).  The Supreme Court has further held that the same presumption applies "when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding."  Id.

In his brief to the MAC, Petitioner argued that he was "denied his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the Constitution," listed these Amendments in the Table of Authorities, and then provided their full text in his addendum.  [ECF No. 14-1 at 23, 38, 41–46].  In his brief to the SJC, Petitioner again argued that he was "denied his right to a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the Constitution," and included the Amendments in the Table of Authorities.  [Id. at 143, 152].  Where the constitutional claims were explicitly referenced in the petitions, the Court finds that they were fairly presented to the state appellate courts and presumes that the Massachusetts appellate courts adjudicated Petitioner's constitutional claims on the merits, despite not specifically referencing them.  [ECF No. 14-1 at 155–61]; see Fortini v. Murphy, 257 F.3d 39, 44–46 (1st Cir. 2001) (section in brief titled "The Trial Court Violated The Defendant's State And Federal Constitutional Rights to Due Process And A Fair Trial By Denying Him The Right To Present Highly Relevant Evidence" should have "alerted the court that a constitutional argument was also being made," even if the "constitutional argument may have been obscured by [the defendant's] emphasis on Massachusetts cases that deal with rules of evidence"); see also Baldwin v. Reese, 541 U.S. 27, 32 (2004) (a petitioner "can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies . . . or by simply labeling the claim 'federal'").  The Court therefore finds that the deferential standard discussed above applies to this case.

B.     Whether Petitioner Is Entitled to Habeas Relief

Although the admissibility of evidence is typically a question of state law that is not "within the reach of federal habeas petitions," Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006), "a misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief," Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011). "Such relief is elusive, as the Supreme Court has 'defined the category of infractions that violate "fundamental fairness" very narrowly.'" Gomes v. Silva, 958 F.3d 12, 23 (2020) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)). To "trigger [habeas] relief" on the grounds that "a misbegotten evidentiary ruling . . . result[ed] in a fundamentally unfair trial [that] violat[ed] due process[,] . . . the state court's application of state law must be 'so arbitrary or capricious as to constitute an independent due process . . . violation.'" Coningford, 640 F.3d at 484 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). "That is, for there '[t]o be a constitutional violation, [the] state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible.'" Gomes, 958 F.3d 12, 24 (quoting Lyons v. Brady, 666 F.3d 51, 56 (1st Cir. 2012)).

Under this standard, courts in the First Circuit consider whether there is "any 'clearly established' Supreme Court precedent" contrary to the evidentiary ruling below. Gomes, 958 F.3d at 25. In "[t]he absence of an on-point pronouncement from the Supreme Court," the Petitioner is left "hanging by the slimmest of threads," and must show that the "admission of the [challenged] evidence" was "an unreasonable application of the broader fair-trial principle." Id. (alteration in original) (quoting Coningford, 640 F.3d at 485). The admission of evidence may result in an unfair trial if, for example, the ruling was outside the "universe of plausible evidentiary rulings," id. (quoting Coningford, 640 F.3d at 485), or was "'so lacking in justification that there was an error well understood and comprehended in existing law beyond

6

any possibility for fairminded disagreement,'" id. at 25–26 (quoting Harrington, 562 U.S. at 103).

> Here, Respondent argues that
>
> the MAC reasonably found [that] the cell phone evidence was properly admitted under the Massachusetts business records exception to [the] hearsay rule and the probative value of the evidence outweighed its prejudicial effect where the Commonwealth "admitted abundant corroborative evidence that [Petitioner] and Greene exchanged calls leading up to their joint criminal enterprise." . . . And the admission of jail calls between Greene and a female caller were not admitted for the truth of the matter asserted but to show that Greene was known as "June" and that a relationship existed between the perpetrators.

[ECF No. 17 at 6 n.4 (internal citation omitted)].

Petitioner does not identify, and the Court is not aware of, any clearly established Supreme Court case law that prohibits the admission of cell phone records under the business records exception to the hearsay rule, or of a jail call recording for the dual purposes of identification and to establish a relationship between two individuals. The one case that Petitioner does cite as purported controlling Supreme Court law, Crawford v. Washington, held that "[w]here testimonial statements are at issue," the party against which statements are admitted must have an opportunity to cross-examine the speaker. 541 U.S. 36, 68–69 (2004); see also [ECF No. 18 at 5].[3]

The statements in this case, however, are not testimonial, and "[i]t is well-settled that when a statement is non-testimonial, there is no right to confrontation." United States v. Estes, 985 F.3d 99, 105 (1st Cir. 2021) (citations omitted). "A 'testimonial statement' is one made with the primary purpose of creating evidence for the prosecution." United States v. Alcorta, 853

---

[3] Petitioner also cites Ford v. United States, 273 U.S. 593 (1927) without description or analysis, and Maryland v. Craig, 497 U.S. 836 (1990) for a description of the general benefits of face-to-fact confrontation. See [ECF No. 18 at 6]. Neither case, however, provides relevant controlling law.

F.3d 1123, 1137 (10th Cir. 2017) (citing Ohio v. Clark, 576 U.S. 237, 244–46 (2015)).  As relevant here, the Supreme Court has held that "[b]usiness and public records"—like the cell phone records at issue here—are "generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."  Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009).  Similarly, the First Circuit has found that the admission of a jail call recording between an appellant and his girlfriend did not violate the Sixth Amendment when it was not offered for the truth of the matter asserted.  United States v. Hicks, 575 F.3d 130, 140, 143 (1st Cir. 2009) (on jail call, "appellant told [his girlfriend] how to package and sell cocaine at" her home, which was "evidence [that] directly contradicted appellant's theory that he was an innocent bystander to the drug trade happening within [the girlfriend]'s home").  Here, there is no indication that the cell phone records or the jail call recording were made for the purpose of creating evidence for the prosecution.  Thus, their admission did not violate clearly established Supreme Court law under Crawford.

Without Supreme Court precedent in Petitioner's favor, Petitioner must show that the admission of the cell phone records and the jail call recording violated broader fair-trial principles.  See Coningford 640 F.3d at 484–85 ("petitioner d[id] not identify any clearly established Supreme Court case law speaking directly to the admission of" the evidence at issue, and thus he was left "hanging by the slimmest of threads" because he now needed to show "that the state court's admission of the . . . evidence [was] an unreasonable application of the broader fair-trial principle" (first citing Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991); and then citing Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003))).  Here, the MAC directly and carefully

addressed the trial court's admission of the cell phone records and the jail call recording, and found that both pieces of evidence were admissible under Massachusetts law. [ECF No. 14-1 at 155–61]. The SJC then affirmed the MAC. [Id. at 162]. The Court sees no reason why these decisions were implausible or arbitrary or capricious. See Coningford 640 F.3d at 485 (denying habeas where "the state court's approval of the introduction of . . . evidence . . . , whether or not an unarguably correct evidentiary ruling, was well within the universe of plausible evidentiary rulings . . . [and] was, therefore, not so arbitrary or capricious as to work a denial of the petitioner's constitutionally secured fair-trial right"). Thus, the Court finds that Petitioner has not shown that the admission of the cell phone records and the jail call recording resulted in a fundamentally unfair trial and that he is therefore not entitled to habeas relief.

## IV.    CONCLUSION

For the reasons stated above, Perkins' petition, [ECF No. 1], is DENIED.

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rules Governing Section 2254 Cases, R. 11(a). Given that Petitioner has not shown that the admission of the cell phone records and the jail call recording resulted in a fundamentally unfair trial, the Court declines to issue a certificate of appealability here. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

August 14, 2023                                                     /s/ Allison D. Burroughs
                                                                                                     ALLISON D. BURROUGHS
                                                                                                     U.S. DISTRICT JUDGE